ENDORSED
FILED IN MY OFFICE THIS

DEC 19 2006

*Quanita M. Lwan*
CLERK DISTRICT COURT

PATRICIA SERNA

SECOND JUDICIAL DISTRICT COURT
COUNTY OF BERNALILLO
STATE OF NEW MEXICO

NO. CV- 2006 1 0 5 8 0

FOOTHILLS OF ALBUQUERQUE SHOPPING
CENTER ASSOCIATES,

        Plaintiff,

vs.

SUNWEST N.O.P., INC., a Nevada
corporation,

        Defendant.

COMPLAINT FOR BREACH OF LEASE

        Plaintiff states:

        1.  The real property which is the subject of this litigation is located in Bernalillo County, New Mexico.

        2.  This litigation arises out of a Shopping Center Lease dated July 3, 1972, between FHM-Peterson, a partnership, as Lessor, and Safeway Stores, Inc., a Maryland corporation, as Lessee (the "Lease").  The Plaintiff is the successor in interest to the Landlord under that Lease, and the Defendant is the successor in interest to the Tenant under such Lease.  The Lease term has been extended as provided in ¶17 of the Lease.  The Lease was amended by various Amendments, none of which are relevant to the dispute which is the subject of this litigation.  A copy of the Shopping Center Lease is attached hereto as Exhibit "1" and incorporated herein by reference.

        3.  The Defendant is in breach of said Lease in that, without limitation, Defendant has failed and refused to comply with its



EXHIBIT
D

obligations under ¶ 7 of the Lease to keep the leased premises in good repair throughout the lease term.  The Defendant has failed and refused to maintain and repair the roof to the leased premises to the point that the leased premises have become uninhabitable.

4.  As a consequence of the Defendant's failure and refusal to maintain and repair the roof of the leased premises, the Defendant's sub-tenant of the leased premises, PNM Stores, Inc. dba Big Lots, has refused to conduct its business within the leased premises until such time as the Defendant has performed necessary repairs to the roof.

5.  Big Lots' refusal to conduct its business in the leased premises until the Defendant has repaired the roof is causing substantial harm and prejudice to the Plaintiff for the reason that the leased premises are located within the Foothills Shopping Center, and Big Lots' non-operation of its business within the Shopping Center decreases customer traffic to the Shopping Center as a whole, and thus decreases the business available to other tenants within the Shopping Center.

6.  The Plaintiff has given the Defendant notice of such default, and has demanded that the Defendant cure such default, in accordance with the requirements of the Lease; but the Defendant has failed and refused to cure its default.

7.  As a direct, proximate and foreseeable result of the Defendant's breach of its Lease obligations, Plaintiff has suffered damages in an amount to be determined at trial.  Defendant's

2

actions have been willful, wanton, reckless and in gross disregard of its duties under the Lease, such that punitive damages should be assessed against the Defendant in an amount to be determined at trial.

8.   Pursuant to ¶ 16 of the Lease, the Plaintiff is entitled to a termination of the Lease, and is also entitled to all other remedies provided by law.

9.   Pursuant to ¶ 24 of the Lease, the Plaintiff is entitled to recover its reasonable attorney fees incurred in this action.

WHEREFORE, Plaintiff prays the Court for judgment terminating the Lease, for compensatory and punitive damages in an amount to be determined at trial, for costs and attorney's fees, and for such other and further relief as the Court may deem just and proper.

Respectfully submitted,

FLOYD D. WILSON, P.C.

By _____
    Floyd D. Wilson
    Attorney for Plaintiff
    6707 Academy RD NE
    Albuquerque, New Mexico 87109
    (505) 857-0001

c:\collierh.big\complaint

3

# SHOPPING CENTER LEASE

THIS LEASE is made this    3rd               . day of   July               , 19 72
between    PIM – PETERSON, A PARTNERSHIP

, lessor,

and SAFEWAY STORES, INCORPORATED, a Maryland corporation, lessee, on the following terms and
conditions:

1. Premises. Term. Lessor hereby leases to lessee a portion of the following-described real
property in the City of   ALBUQUERQUE               , County of   BERNALILLO
State of   NEW MEXICO                              :

THE REAL PROPERTY DESCRIBED IN EXHIBIT "B" ATTACHED HERETO AND MADE A
PART HEREOF.

on which property lessor is to construct the                              Shopping Center
(herein called the "shopping center") as shown on the plan dated July 31, 1972 last revised 8/11/72
, attached hereto as Exhibit "A". The portion of the shopping
center hereby leased (herein called the "leased premises") is designated "Safeway" and outlined in
red on Exhibit "A", and includes the building, or portion of building, and related improvements to be
constructed thereon by lessor in accordance with the provisions of this lease.

TO HAVE AND TO HOLD the leased premises, together with all appurtenances, for a term of
TWENTY                   (   20   ) years commencing   AUGUST 1               , 19 73     ,
and ending   JULY 31               , 19 93     .

2. Rent. Lessee agrees to pay rent in the sum of

DOLLARS
($                   ) on the first day of each calendar month during the term by checks or drafts
payable to                                                                         and
mailed to                              , at
as designated in writing by lessor. The rent for any fractional calendar month shall be prorated

## Exhibit "1"

-1-

2. Rent.  Lessee agrees to pay the following rents, by checks or drafts payable to

and mailed to    Lessor

at  9465 Wilshire Boulevard, Beverly Hills, California

or as designated in writing by lessor:

(a)  A fixed minimum rent in the sum of    Four Thousand Six Hundred and No/100---------
-----------------------DOLLARS ($ 4,600.00 ) payable in advance on the first day of
each calendar month during the term. The minimum rent for any fractional calendar month shall be prorated.

(b)  A percentage rent equal to one percent (1%) of the first Four Million and
No/100 Dollars ($4,000,000) plus three-fourths of one percent (3/4%) thereafter of
the amount, if any, by which gross sales made by lessee in the leased premises in
each calendar year of the lease term exceeds that amount, one and one-half percent
(1½%) of which is equal to the minimum rent for the same calendar year. Except as
provided in paragraph 36 below, it is agreed that the percentage rent paid to Lessor,
in any calendar year, after all deductions and offsets from percentage rent, shall
not exceed Ninety Thousand Dollars ($90,000.00).  If lessee occupies the leased premises
for a fractional period of a calendar year, percentage rent for said fractional period
shall be prorated based on the annual rate of gross sales made by lessee in the leased
premises during said fractional period and the annual rate of minimum rent for said
fractional period.

On or before the forty-fifth day following each December thirty-first during the term and the last day of
the term lessee shall mail to lessor, at the place where rent is payable, a statement showing gross sales made
by lessee in the leased premises during the term of this lease for the calendar year or portion thereof last
preceding the due date of such statement together with any percentage rent due.

The term "gross sales" as used herein shall not include any of the following: (1) credits or refunds to
customers for merchandise returned or exchanged; (2) transfers of merchandise from the leased premises to
other stores or warehouses of lessee or its affiliated companies; (3) any sales taxes or other taxes imposed
under any laws, ordinances, orders or regulations, whether now or hereafter in force, upon or based upon the
gross receipts of lessee or the sale or sales price of merchandise and which must be paid by lessee, whether or
not collected by lessee from its customers; (4) returns of merchandise to shippers or manufacturers; (5) the net
amount of discounts allowed to any customer pursuant to any customary and reasonable policy adopted by
lessee, including in such discounts, but not by way of limitation, the net amount of any discounts allowed by
way of or resulting from the issuance to customers of trading stamps or other evidences of purchase for
immediate or future exchange for merchandise or other things of value; and (6) merchandise or other things of
value issued in redemption of such trading stamps or other evidences of value, or issued as a premium or
otherwise in connection with any sales promotion program of lessee. Lessor agrees to hold in confidence all
sales and related information furnished by lessee. Lessee makes no representation or warranty as to the sales
which it expects to make in the leased premises.


*  The annual minimum rent is based on $2.40 times the floor area of 23,000 square
feet in the leased premises.  If the completed floor area exceeds 23,000 square
feet, the guaranteed annual minimum rent shall be increased by $2.40 times the
actual floor area in excess of 23,000 square feet.

3. Lessor's title. Zoning. Lessor covenants that lessor has lawful title to the shopping center and full right to make this lease and that, within thirty (30) days after receipt of lessee's request, lessor will provide lessee with a licensed surveyor's recent survey of the shopping center which is satisfactory to lessee and with current evidence satisfactory to lessee from a responsible title insurance company of the status of lessor's title to the shopping center. Lessor further covenants that, at the time of the recording of the short form lease referred to in paragraph 23, the shopping center will be free from encumbrances except those agreed to in writing by lessee and that there will be no zoning or other ordinances, or title or other matters, except those agreed to in writing by lessee, which will restrict lessee's operation of a general mercantile business (including the sale of alcoholic beverages if not prohibited by law and if lessee obtains all necessary licenses and/or permits at lessee's expense) in the leased premises or the use of the common areas of the shopping center as provided for in this lease, and that so long as lessee is not in default lessee shall have quiet and peaceful possession of the leased premises and enjoy all of the rights herein granted without interference. In the event of any violation of any of the covenants made by lessor in this paragraph, lessee may cancel this lease by notice to lessor. After the short form lease is recorded and all title matters reviewed and approved by lessee, then the provisions of this paragraph 3 shall be conclusively deemed satisfied as to title matters and Lessee shall have no further right to cancel this lease for said title matters.

ping center not shown as building areas on Exhibit "A" shall be common areas for the sole and exclusive joint use of all tenants in the shopping center, their customers, invitees and employees, and lessor hereby grants to lessee and its customers, invitees and employees the right of such exclusive joint use of all of said common areas and any enlargement thereof. Lessor agrees that, at lessor's expense, all common areas will be maintained in good repair, kept clean, and kept clear of snow and ice and adequately lighted when stores are open for business. Lessor further agrees that all buildings in the shopping center other than the building on the leased premises will be completed as shown on Exhibit "A" and ready for occupancy by not later than **            ,49     , that, following completion of construction of any portion of the shopping center, the sizes and arrangements of said buildings and common areas (including parking areas) will not be changed without lessee's written consent, and that if said buildings are not so completed or if said sizes or arrangements are changed without lessee's written consent, lessee may cancel this lease by notice to lessor. ***Lessor further agrees that if the shopping center is expanded by ownership, control of lessor, or agreement with a third party, all of the provisions of this lease with respect to the shopping center and the leased premises shall apply to the expanded area, and the parking to building ratio in the expanded area of the shopping center will not be less than the ratio shown on Exhibit "A".

* for the principal tenants pursuant to paragraph 20 and other shops indicated "S" on the Exhibit "A" plot plan of not less than 10,000 square feet.

** the commencement date of this lease as may be adjusted by paragraph 6.

*** Store fronts and interiors in the 10,000 square feet of other shops need not be installed until the requirements of the individual tenants are determined. Lessee shall not be entitled to cancel this lease pursuant to this paragraph 4 unless Lessee notifies Lessor in writing of the violation and Lessor fails to correct the violation within a reasonable time after such notice.

5. Construction of common areas and lessee's building. Plans and specifications. Lessor agrees, at lessor's sole cost, risk and expense, to construct on the common areas a sign tower for lessee, all parking and service areas, sidewalks, driveways and related improvements shown on Exhibit "A" and to construct on the leased premises a building or portion of a building, all in accordance with plans and specifications to be prepared at lessor's expense by John Reed, 5905 Marble N.E. Suite 12, Albuquerque, N.M. 87110 (architect), and approved in writing by lessor and lessee. Lessee shall furnish lessor with drawings and/or specifications setting forth lessee's requirements to be incorporated in the plans and specifications to be prepared by the architect. Upon approval by the parties, the plans and specifications shall become a part of this lease as though set out in full herein. If, for any reason whatsoever, the parties fail to agree on plans and specifications on or before November 1             , 19 72     , either party may cancel this lease by notice to the other party within ninety (90) days thereafter. Lessee may have the plans and specifications revised, at lessor's expense, if more than ninety (90) days elapse between the date of approval of plans and specifications and the date of commencement of construction of the building on the leased premises. Lessor agrees to complete said construction work (which shall include lessor's obtaining and furnishing to lessee of any certificate of occupancy or like document required by lawful authority) by not later than the date of commencement of the term of this lease specified in paragraph 1. Lessee may enter upon the leased premises during the course of construction to inspect the construction work and to install its fixtures and equipment and such entry shall not constitute acceptance of possession of the leased premises by lessee.

6. Acceptance of possession. The term of this lease shall not commence until lessee accepts possession of the leased premises. Lessee shall accept possession of the leased premises when they are ready for occupancy, the words "ready for occupancy" being defined for this purpose to mean the date upon which the construction work referred to in paragraph 5 is fully completed in accordance with the plans and specifications and exclusive possession of the leased premises is delivered to lessee. If lessee accepts possession of the leased premises on a date other than the commencement date specified in paragraph 1, the term shall commence on the date lessee accepts possession but the expiration date specified in paragraph 1 shall remain unchanged. If, for any reason whatsoever, the leased premises are not ready for occupancy within ninety (90) days after the commencement date specified in paragraph 1, lessee may cancel this lease by notice to lessor. Notwithstanding the provisions of paragraph 2, the rent shall not commence, become due, or be payable until thirty (30) days after the term of this lease commences or until the date lessee opens for business in the leased premises, whichever shall first occur. Notwithstanding anything herein contained to the contrary, Lessee shall not be required to accept possession of the leased premises during the months of November and December, if Lessee so elects.

7. Lessee's Repairs. Lessee shall, at Lessee's expense, keep the leased premises in good repair throughout the lease term, except for ordinary wear and tear and except as provided in Paragraphs 12 and 27 hereof. Except as provided in Paragraphs 12 and 27 hereof, Lessor shall be under no obligation whatsoever to make any repairs, alterations or replacements to the leased premises or to the improvements thereon, whether ordinary or extraordinary, structural or non-structural, and Lessee waives all laws in contravention thereof; provided, however that in the event any of the walls of the building on the leased premises shall be used as a party wall, then Lessor shall be responsible for repairing any damages to said wall caused by defective materials or workmanship used in construction of said walls or damage caused by the acts of the adjoining tenant or tenants, their customers, agents, and employees, and Lessor agrees to repair all of the damage to the leased premises caused by or resulting from damage to any such party wall by said adjoining tenant or tenants or by said defective materials or workmanship. Lessor shall, however, replace or repair all defective materials or workmanship affecting the structural portion of the building on the leased premises (including, without limitation, the roof, roof structures and supports, foundation and structural supports, walls, structural portions of the floors, chimneys, skylights, gutters, downspouts and exterior doors) but excepting all plate glass, discovered during the first twelve (12) months of the lease term that were the responsibility of the Lessor.

-3-

8. Lessee's repairs. Utilities. ~~Lessee agrees to repair all damage to the leased premises~~ caused by lessee's use other than ordinary wear and tear and the ~~matters covered in paragraph 7~~ and that on surrendering possession it will leave the leased premises in good condition, allowance being made for ordinary wear and tear, damage by fire, the elements or other casualty, or resulting from the ~~acts of persons other than lessee, or from defects therein, being excepted~~. Lessee may make such repairs, alterations and improvements to the leased premises as lessee deems desirable but lessee agrees not to permit any liens to stand against the leased premises for work done or materials furnished. Lessee may paint the interior of the building on the leased premises in such colors as lessee elects. Lessee shall have the exclusive right to paint, erect or authorize signs in, on or about the building on the leased premises and may, at any time, remove signs and color effects installed by lessee. On surrendering possession lessee shall not be required to restore the leased premises to their condition at the commencement of the term, and lessor agrees to accept the leased premises with alterations and improvements made by lessee. Lessee agrees to pay all charges for electricity, gas, heat, water, telephone and other utility services used by lessee on the leased premises. Any exterior alterations or signs shall be subject to the approval of Lessor which shall not be unreasonably withheld.

9. Lessee's fixtures. Lessee may install in the leased premises such fixtures and equipment as lessee deems desirable and all of said items shall remain lessee's property whether or not affixed or attached to the leased premises. Lessee may remove said items from the leased premises at any time but shall repair any damage caused by removal.

10. COMPLIANCE WITH LAWS. Lessee agrees to make all repairs, improvements or alterations to the leased premises required by any governmental authority having jurisdiction of the leased premises. Lessor agrees to make all repairs, improvements, or alterations to the common areas required by such authority.

11. DAMAGE BY CASUALTY (See Paragraph 27).

material   material

12. **Condemnation.** If any portion of or interest in the shopping center including, without limitation, the leased premises, the common areas, and the other buildings in the shopping center, shall be taken or damaged under any right of eminent domain or any transfer in lieu thereof, and such taking or damage renders the leased premises unsuitable ~~in the judgment of lessee~~ for lessee's business operation, lessee may cancel this lease by notice to lessor within thirty (30) days after such taking or damage, deprives lessee of possession of any portion of the leased premises or of any other rights of lessee under this lease. If this lease is not so terminated, lessor shall promptly restore the shopping center to an architectural unit as nearly comparable as practicable to the unit existing just prior to such taking or damage and this lease shall continue, but, commencing with the date on which lessee is deprived of the use of any portion of the leased premises or of any rights under this lease, the rent shall be abated or proportionately reduced according to the extent to which lessee is deprived of such use to rights. Nothing contained herein shall prevent lessor and lessee from prosecuting claims in any condemnation proceedings for the values of their respective interests, provided, however, the award to lessee shall not diminish the award to Lessor for the value of the land and improvements. Lessee shall be entitled to the portion of any award allocated to the taking of any leasehold improvements made by Lessee and not paid for by Lessor and to the taking of Lessee's fixtures and equipment (including the cost of moving same).

13. **Assignment and subletting.** Lessee may assign this lease or sublet the whole or any part of the leased premises. If lessee assigns this lease, lessee shall remain liable ~~as a surety~~ to lessor for full performance of lessee's obligations.

~~14. Competitive business. Lessor covenants not to permit over 1500 square feet of space~~ (including aisle space adjacent thereto) in any store in the shopping center, other than lessor's, to be devoted to the sale of ~~food for off-premises consumption~~. In the event of a violation of this covenant, ~~lessee may cancel this lease by notice of lessor.~~

15. **Indemnification.** Lessee agrees to indemnify lessor against and save lessee harmless from all demands, claims, causes of action or judgments, and all reasonable expenses incurred in investigating or resisting the same, for injury to person, loss of life or damage to property occurring on the leased premises and arising out of lessee's use and occupancy, except if caused by the act or neglect of lessor, its contractors, agents or employees, or occurring on the common areas if caused by the act or neglect of lessor, its contractors, agents or employees. Lessor agrees to indemnify lessee against and save lessee harmless from all demands, claims, causes of action or judgments, and all reasonable expenses incurred in investigating or resisting the same, for injury to person, loss of life or damage to property occurring on the common areas, except if caused by the act or neglect of lessee, its contractors, agents or employees, or occurring on the leased premises if caused by the act or neglect of lessor, its contractors, agents or employees, or occurring anywhere within the shopping center prior to the commencement of the term. The parties shall maintain adequate insurance covering their obligations under this paragraph in respect of injury to person and loss of life and furnish each other with evidence of such coverage.

16. **Default.** If lessee shall be in default for more than twenty (20) days after receipt of lessor's notice specifying such default, lessor may declare the term ended and re-enter the leased premises with or without process of law. If lessor shall be in default for more than twenty (20) days after receipt of lessee's notice specifying such default, lessee may incur any expense necessary to perform any obligation of lessor specified in such notice and deduct such expense from the rents thereafter to become due. The performance of each and every covenant and agreement by lessor herein contained shall be a condition precedent to lessor's right to collect rents or enforce this lease.

17. Options for renewal. Lessee, at lessee's option, by giving lessor sixty (60) days' written notice before the expiration of the term or option term then in effect, may extend the term of this lease for six (6) separate and additional periods of five (5) years each on the same terms and conditions, except that lessee, by giving lessor one hundred eighty (180) days' written notice, may cancel any option term then in effect.

18. Holding over. If lessee remains in possession of the leased premises after the expiration of this lease, such continued possession shall, if rent is paid by lessee and accepted by lessor, create a month-to-month tenancy on the terms herein specified, and said tenancy may be terminated at any time by either party by thirty (30) days' notice to the other party.

19. Notices. Any notice provided for herein shall be given by registered or certified United States mail, postage prepaid, addressed, if to lessor, to the person to whom the rent is then payable at the address to which the rent is then mailed, and, if to lessee, to it at P. O. Box 1452, El Paso, Texas 79948.

The person and the place to which notices are to be mailed may be changed by either party by notice to the other party.

20. Principal tenants. Lessor covenants that, by not later than ninety (90) days before the lease commencement date specified in paragraph 1, lessor will furnish lessee with copies of fully executed leases and all amendments thereto with the following tenants for space in the shopping center in the location shown on Exhibit "A" and in an amount not less than the amount set opposite each tenant's name, for a term not less than the number of years set opposite its name:

| | | | |
|---|---|---|---|
| Thrifty Drug Store | 21,440 | sq. ft. | Twenty (20) years |
| Sprouse-Reitz Co., Inc. | 14,740 | sq. ft. | Twenty (20) years |
| | | sq. ft. | years |

Lessor covenants that each said tenant's lease will be noncancellable except for cancellation rights based on default, casualty damage or condemnation which are substantially similar to such cancellation rights set forth in this lease, the words "substantially similar" being defined for this purpose to mean that the event, act, or inaction, which gives said tenant a right to cancel its lease would also under the terms of this lease give the herein lessee the right to cancel this lease if such event, act, or inaction was experienced by the herein lessee rather than by said tenant. Lessor covenants that all of said tenants will have opened their respective stores to the general public for business by not later than the lease commencement date specified in paragraph 1. If any of said covenants are not fulfilled, lessee may, at its option, either (a) notwithstanding the provisions of paragraph 6 refuse to accept possession of the leased premises until said covenants are fulfilled, or (b) accept possession of the leased premises and open for business without incurring any obligation for minimum rent until said covenants are fulfilled.

Lessee agrees to open for business within the leased premises within thirty (30) days after the construction work in Paragraphs 4 & 5 hereof is completed, provided, lessor's covenants in paragraph 3 hereof have been completed, and provided the lessee has accepted the leased premises pursuant to paragraph 6 hereof, and provided further the leases referred to in Paragraph 20 have been furnished to Lessee and the tenants referred to in Paragraph 20 have opened for business or will open for business concurrently with Lessee. Lessee's obligation to open for business shall be subject to unavoidable delays such as strikes, fire or casualty damage, war, riots, or other matters (except financial) beyond the reasonable control of Lessee.

-6-

If any lease referred ___ above is cancelled prior to the exp___ ion of the term prescribed for that lease, except pursuant to a cancellation right substantially similar (as defined above) to the cancellation rights contained in this lease for default, casualty damage or condemnation, lessee's obligation t.. pay minimum rent shall cease as of the date of such cancellation and lessee's obligation for minimum rent shall not resume until (a) lessor shall have furnished lessee with a copy of a fully executed lease and all amendments thereto with a similar tenant acceptable to lessee for the same space in the shopping center and for a term of not less than the remainder of the term specified in such cancelled lease and (b) such similar tenant shall have opened its store to the general public for business. The name of such similar tenant shall then be deemed to be named as a principal tenant as listed above and be subject to the provisions of this paragraph. If such similar tenant has not opened its store to the general public for business within one hundred eighty (180) days after such principal tenant's lease is cancelled, lessee may at its option cancel this lease by notice to lessor.

21. Remedies cumulative. No remedy herein conferred upon or reserved to lessor or lessee shall exclude any other remedy herein or by law provided, but each shall be cumulative and in addition to every other remedy given hereunder or now or hereafter existing at law or in equity or by statute.

22. Automatic termination. Notwithstanding anything herein to the contrary, if this lease has not previously been terminated and the term of this lease has not commenced by five (5) years from the date of this lease, this lease shall thereupon automatically terminate.

23. Short form lease. This lease shall not be recorded but it is agreed that, upon request by either party, the parties will execute a short form of this lease which may be recorded by either party.

24. Attorney's fees. If lessor or lessee files a suit against the other which is in any way connected with this lease, the unsuccessful party shall pay to the prevailing party a reasonable sum for attorney's fees, which shall be deemed to have accrued on the commencement of such action and shall be enforceable whether or not such action is prosecuted to judgment.

25. Paragraph headings. The paragraph headings of this lease are inserted only for reference and in no way define, limit, or describe the scope or intent of this lease nor affect its terms and provisions.

26. Rights of successors. All of the rights and obligations of the parties under this lease shall bind and inure to the benefit of their respective heirs, personal representatives, successors and assigns.

27. DAMAGE BY CASUALTY. If the leased premises are damaged by fire, the elements, or other casualty, Lessor shall promptly repair all damage and restore the leased premises to their condition just prior to the damage. If Lessor is delayed in restoring the leased premises as a direct result of a strike, riot, insurrection, fire, or act of God, or operation of law, governmental regulation or order, an extension of one (1) working day will be allowed Lessor for each working day lost from such cause, providing, however, that in any and all events if the leased premises are not restored and all damage repaired within one (1) year after the date of damage, Lessee may cancel this lease by notice to Lessor. If Lessee is deprived of the use of any substantial portion of the leased premises either by reason of said damage or during restoration, the rent shall be abated or proportionally reduced according to the extent to which Lessee is deprived of such use. Lessee agrees to keep in effect on the leased premises fire insurance with extended coverage endorsement and vandalism and malicious mischief endorsement in an amount not less than ninety percent (90%) of the replacement value of the building improvements thereon. Notwithstanding anything to the contrary contained in this paragraph, Lessee shall have the right to self-insure the perils covered by the vandalism and malicious mischief endorsement. Said policy or policies of insurance to provide the payment for any losses covered under or by said policy or policies of insurance shall be made to Lessor and/or Lessee and/or any mortgagee and/or assignee designated by Lessor from time to time as their respective interests may appear. If, dur ng the last three (3) years of the original lease term or during any option term the leased premises are damaged by fire, the elements, or other casualty to the extent of seventy-five

-7-

percent (75%) or more of the insurable value thereof, Lessee may terminate this lease as of the date of damage by notice to the lessor within thirty (30) days after said date.  Lessor agrees that if the buildings adjacent to the leased premises are not constructed in a manner which will allow the sprinklered rate for fire insurance with extended coverage endorsement to apply to the building on the leased premises the Lessor will reimburse Lessee for the difference between the sprinklered rate and the unsprinklered rate for fire insurance with extended coverage endorsement for the building on the leased premises.  In the event any percentage rent shall be payable to lessor under paragraph 2 of this lease for any calendar year, all sums paid by lessee under this paragraph during the same calendar year shall be deducted from the percentage rent otherwise payable to lessor.

28.  COST OF COMMON AREA MAINTENANCE.  Lessee agrees to reimburse Lessor for Lessee's share of the cost to Lessor of lighting the common areas and keeping the same clean and clear.  Lessee's share shall be One Hundred Seventy Five and No/100 Dollars ($175.00) per month for the first five (5) years, Two Hundred and No/100 Dollars ($200.00) per month for the second five (5) years, Two Hundred Twenty-Five and No/100 Dollars ($225.00) per month for the third five (5) years and Two Hundred Fifty and No/100 Dollars (250.00) per month for the last five (5) years of the lease term, and Two Hundred Seventy-Five and No/100 Dollars ($275.00) per month for the first five (5) year option period, Three Hundred and No/100 Dollars ($300.00) per month for the second five (5) year option period, Three Hundred Twenty-Five and No/100 Dollars ($325.00) per month for the third five (5) year option period, Three Hundred Fifty and No/100 Dollars ($350.00) per month for the fourth five (5) year option period, Three Hundred Seventy-Five and No/100 Dollars ($375.00) per month for the fifth five (5) year option period, and Four Hundred and No/100 Dollars ($400.00) per month for the sixth five (5) year option period.  In the event any percentage rent shall be payable to lessor under paragraph 2 of this lease for any calendar year, all sums paid by lessee under this paragraph during the same calendar year shall be deducted from the percentage rent otherwise payable to lessor.

29.  SOIL TESTS.  Lessor agrees to furnish soil tests and overall grading plan of the entire shopping center to Lessee prior to submitting plans and specifications, and shall compact the building pad on the leased premises to ninety percent (90%) of maximum density in accordance with the plans and specifications prior to installing the foundations for the building.

30.  TAXES.  Lessor shall arrange for the segregation of real property taxes and assessments against the leased premises from all other property.  Lessor shall arrange for the segregation of real property taxes and assessments against the common areas from all other property.  Lessee shall pay the real property taxes and assessments against the leased premises during the term of this lease.  Lessee shall reimburse Lessor for Lessee's share of the real property taxes and assessments against the common areas during the term of this lease.  Lessee's share of the common area taxes shall be the fraction in which the numerator is the number of square feet of building floor area of the leased premises and the denominator is the number of square feet of building floor area in the shopping center, including the leased premises, or 69,661 square feet, whichever is the greater.  Should buildings be constructed in excess of 69,661 square feet, the denominator shall be increased by the amount of building floor area so constructed.  Taxes shall be prorated as of the lease commencement and terminations dates relating to such additional buildings.  In the event the Lessor is unable to obtain a segregation of the real property taxes by the county Assessors, he shall obtain a proration of said taxes.  In the event any percentage rent shall be payable to lessor under paragraph 2 of this lease for any calendar year, all sums paid by lessee under this paragraph during the same calendar year shall be deducted from the percentage rent otherwise payable to lessor.

31.  OFFSET STATEMENTS.  Lessee shall, at any time and from time to time, within thirty (30) days after written request by Landlord, to the extent Lessee can truthfully do so, deliver a certificate to Landlord or to any proposed mortgagee, trust deed holder or purchaser certifying that this lease is then in full force and effect and setting forth the date to which rent has been paid and the nature of modifications, defenses or offsets, if any, claimed by Lessee.

-8-

32. DEFAULTS BY LESSOR. Notwithstanding anything to the contrary in this lease, Lessor shall not be in default under any provision of this lease unless written notice specifying such default is mailed to Lessor and to all mortgagees and/or trust deed holders of which Lessee has, prior to such notice, been notified in writing. Lessee agrees that Lessor or any such mortgagee or trust deed holder shall have the right to cure such default on behalf of Lessor within thirty (30) calendar days after receipt of such notice. Lessee further agrees not to invoke any of its remedies (except injunctive relief) under this lease until thirty (30) days have elapsed or during any period that Lessor or any such mortgagee or trust deed holder is proceeding to cure such default with due diligence or is taking steps with due diligence to obtain legal right to enter the shopping center and cure the default.

33. DEFINITION OF LESSOR. The term "lessor" as used in this lease shall mean the owner of the leased premises. If the leased premises are sold, the seller shall be entirely relieved and discharged of all covenants and obligations under this lease, except those accrued to the date of such sale by Lessor. It shall be deemed without further agreement between the parties hereto and their successors that the purchaser at such sale has assumed and agreed to carry out all of the covenants and obligations of Lessor hereunder. Notwithstanding the foregoing, the original Lessor under this lease shall not, by reason of any sale or conveyance, be relieved of its obligation to complete the construction of the building on the leased premises, the common areas shown in Exhibit "A", 14,400 square feet of other buildings and the requirements of paragraph 20 of this lease.

34. SUBORDINATION. Lessee, agrees that this lease shall, at the option of Lessor, be subordinate to any mortgages or deed of trust now or hereafter placed against all or part of the shopping center provided that each lender shall enter into a recordable nondisturbance agreement with Lessee which shall provide that, in the event of foreclosure or other action, sale or proceedings thereunder, Lessee, if not then in default, will not be made a party to any such suit or proceedings, and the same shall not affect the rights of Lessee under this lease.

35. LESSEE'S USE. Lessee covenants that the leased premises shall not be used for the handling or sale of items which under applicable law must be sold by or in the presence of or under the supervision of a registered pharmacist; provided, however, the foregoing restriction shall become null and void and of no further force and effect in the event if for a period of six (6) months or more, except for temporary closings because of remodeling, repairs, alterations, strikes, lockouts, or other reasons (except financial) beyond the reasonable control of the occupant of the other premises in the shopping center referred to for Thrifty Drug Stores Co., Inc. in paragraph 20 hereof, a pharmacy under the supervision of a registered pharmacist ceases operation in said other premises.

36. FUTURE EXPANSION. It is understood and agreed that Lessee, at the end of the first five (5) years of the lease term, may have an addition made to the leased premises. Said addition is to be located within the area northeast of the leased premises which area is 40' x152' as shown on Exhibit "A" as "Safeway Expansion". Said addition shall be constructed under the following terms and conditions: (1) If Lessee desires said addition it shall give notice ("Notice of Request") to Lessor within one (1) year after the end of the said first five (5) years of the lease term, and request Lessor to build said addition according to plans and specifications which shall be prepared by Lessee and approved by Lessor, said approval not to be unreasonably withheld. (2) Upon completion of said addition by Lessor in accordance with the plans and specifications, the monthly minimum rent payable by Lessee, under the provisions of paragraph 2 (a), shall be increased by an amount to be agreed upon by Lessor and Lessee prior to the commencement of construction. (3) If Lessor and Lessee cannot agree on a rental within sixty (60) days from the date of Lessee's notice of request, then Lessee may, at its sole cost and expense, make such addition to the leased premises; provided, however that (a) said addition is in accordance with the above and that all plans for the

-9-

addition must be approved by all governmental authorities having jurisdiction thereof, and in writing by the Lessor before construction commences, such approval not to be unreasonably withheld, (b) the Lessee will indemnify and save harmless the Lessor from and against any and all manner of claims for liens for wages or materials or for damage to person or property caused during the making of or in connection with the aforesaid addition which the Lessee shall make or cause to be made, (c) The monthly minimum rent payable by Lessee under the provisions of paragraph 2 (a) shall be increased, effective the date Lessor gives Lessee possession of the "Safeway Expansion" area, by one-twelfth (1/12th) of 10% of the fair market value of the total square footage of land area, not previously build upon, that is incorporated into the leased premises, (d)  The maximum amount of sales on which percentage rental is paid, as provided for in paragraph 2 (b) shall be increased by a percentage equal to the percentage increase in minimum annual rent.

If Lessee constructs said addition the Lessee may offset against any percentage rent payable under paragraph 2 (b) above, the actual cost of said improvements amortized with interest at the local prime bank rate at the time of completion of said improvements, prorated over the remainder of the original term of this lease.

37. FUTURE BUILDING AREA.  Lessor shall have the right to construct additional buildings in the areas designated "Future Building Area" on Exhibit "A", subject to the following conditions. (a) the maximum height of any future building shall be one story plus mezzanine; (b) no building shall be constructed which would reduce the number of parking spaces in the Shopping Center to below one (1) parking space for each two hundred (200) square feet of interior floor space of all buildings within the Shopping Center; and, (c) vehicular ingress and egress to and from the Service Area behind the Market, Variety, Shops and Drug buildings, as shown on Exhibit "A",to and from Juan Tabo Blvd. and Menaul Blvd. shall always be provided.

IN WITNESS WHEREOF, the parties have executed this Lease as of the day and year first above written.

FHM-PETERSON, A Partnership

By _James A. Peterson_

JAMES A. PETERSON, General Partner

(Lessor)

(Corporate Seal)

SAFEWAY STORES, INCORPORATED
(A Maryland corporation)

By _Harry Sunderland_

Its Assistant Vice President

By _Richard H Cottrill_

Its Assistant Secretary

(Lessee)

-10-

Albuquerque, New Mexico
(NWC Juan Tabo & Menaul)



EXHIBIT "A"

Albuquerque, New Mexico
(NWC Juan Tabo & Menaul)



LEGAL DESCRIPTION
OF
SHOPPING CENTER

All of Block numbered Eighty-eight (88) of Snow Heights, an Addition to the City of Albuquerque, New Mexico, as the same is shown and designated on the plat of Blocks 43 to 83, inclusive of said Addition filed in the office of the County Clerk of Bernalillo County, New Mexico, on November 4, 1953, together with that portion of Menaul Blvd NE and Juan Tabo Blvd NE adjacent thereto vacated by City Ordinance No. 1292, excepting a tract of land within the Northerly corner of Block 88 of Snow Heights, an Addition to the City of Albuquerque, also excepting the Southeasterly Portion of Block 88 of Snow Heights, an Addition to the City of Albuquerque, and being more particularly described by metes and bounds as follows:

Beginning at the Most Northerly Point of the Tract herein described, being a point on the Easterly bright-of-way line of a One Hundred Foot (100) Public Easement on the Westerly boundary of said Block 88; whence the Most Northerly point of Block 88 as the same is shown and designated on the said filed plat bears N 50° 11' E, 218.87 feet distance; thence,
S 00° 49' E, 16.53 feet distance to a point; thence,
N 89° 11' E, 192.09 feet distance to the Northeast corner of the tract herein described, being a point on the Westerly right-of-way line of Juan Tabo Blvd NE; thence,
S 00° 49' E, 500.39 feet distance along the said Westerly right-of-way line of Juan Tabo Blvd NE to
N 89° 39' 50" W, 175.00 feet distance to a point; thence,
S 00° 49' E, 175.00 feet distance to a point on the Northerly right-of-way line of Menaul Blvd NE; thence,
N 89° 39' 50" W, 842.14 feet distance along the said Northerly right-of-way line of Menaul Blvd NE to its intersection with the Easterly right-of-way line of said One Hundred (100) foot Public Easement, being identical to the Southwest corner of the Tract herein described; thence,
N 48° 19' 30" E, 84.59 feet distance along the said easterly right-of-way line of said Public Easement to an angle point; thence,
N 50° 11' E, 979.07 feet distance continuing along the said Easterly right-of-way line of Public Easement to the place of beginning and containing 8.813 acres, more or less.

EXHIBIT "B"

SAFEWAY LEASE
Albuquerque, New Mexico
(NWC Juan Tabo & Menaul)
JAP 8/11/72

SECOND JUDICIAL DISTRICT COURT
COUNTY OF BERNALILLO
STATE OF NEW MEXICO

NO. CV 2006 10580

ENDORSED
FILED IN MY OFFICE THIS

DEC 19 2006

Juanita M Duran
CLERK DISTRICT COURT

FOOTHILLS OF ALBUQUERQUE SHOPPING
CENTER ASSOCIATES,

    Plaintiff,

vs.

SUNWEST N.O.P., INC., a Nevada
corporation,

    Defendant.

## CERTIFICATE OF ARBITRATION

Plaintiff, Foothills of Albuquerque Shopping Center Associates, by and through counsel, hereby certifies that it is seeking monetary relief, and that the amount is more than Twenty Five Thousand Dollars ($25,000.00) exclusive of interest, costs, and attorney's fees.

Respectfully submitted,

FLOYD D. WILSON, P.C.

By _____
Floyd D. Wilson
Attorney for Plaintiff
6707 Academy Road NE
Albuquerque, New Mexico 87109
(505) 857-0001

c:\collierh.big\cerarb

**SECOND JUDICIAL DISTRICT COURT**
**COUNTY OF BERNALILLO**
**STATE OF NEW MEXICO**

**NO.  CV-2006 10580**

**FOOTHILLS OF ALBUQUERQUE SHOPPING**
**CENTER ASSOCIATES,**

**Plaintiff,**

**v.**

**SUNWEST N.O.P., INC., a Nevada**
**corporation,**

**Defendant.**

ENDORSED
FILED IN MY OFFICE THIS

JAN 3 0 2007

*Juanita M. Duran*
CLERK DISTRICT COURT

## ENTRY OF APPEARANCE

COMES NOW Sutin, Thayer & Browne, A Professional Corporation, (Gail

Gottlieb) and hereby enters its appearance on behalf of the Defendant, Sunwest N.O.P.,

Inc.

SUTIN, THAYER & BROWNE
A Professional Corporation

By _____
Gail Gottlieb
**Attorneys for Defendant**
**Sunwest N.O.P., Inc.**
**P.O. Box 1945**
**Albuquerque, NM 87103**
**(505) 883-2500**

We hereby certify that a true and
correct copy of the foregoing was
mailed to:

Floyd D. Wilson
Attorney for Plaintiff
6707 Academy NE
Albuquerque, New Mexico 87109

this 3__ day of January, 2007.

2

SECOND JUDICIAL DISTRICT COURT
COUNTY OF BERNALILLO
STATE OF NEW MEXICO

NO. CV-2006-10580

FOOTHILLS OF ALBUQUERQUE SHOPPING
CENTER ASSOCIATES,

     Plaintiff,

vs.

SUNWEST N.O.P., INC., a Nevada
corporation,

     Defendant.

### PLAINTIFF'S FIRST SET OF INTERROGATORIES
### TO DEFENDANT

     COMES NOW Plaintiff, by and through its attorney, Floyd D. Wilson, P.C., and propounds the following interrogatories to the Defendant, Sunwest N.O.P., Inc., to be fully and completely answered by Defendant, under oath and in writing within thirty (30) days of service on Defendant. In answering these interrogatories, please furnish such information as is available to you, not merely such knowledge or information as you know of your own knowledge. If you are unable to answer the following interrogatories completely, answer to the extent possible, specifically stating the reason for your inability to answer the remainder and stating whatever information or knowledge you have concerning the unanswered portion. As used in these interrogatories, the following terms have the meaning and significance set forth below:

A.   The word "document" is used herein in its broadest sense, and includes any original, reproduction or copy of any kind, typed, recorded, graphic, printed, written or documentary matter, including without limitation, correspondence, memoranda, inter-office communications, notes, diaries, contracts, documents, drawings, plans, specifications, estimates, vouchers, permits, rent and ordinances, minutes or notes of meetings, notices, billings, checks, reports, studies, telegraphs, notes of telephone conversations and notes of any and all communication or representation, including letters, words, pictures, sounds or symbols or combinations thereof, including electronic means of data recordation and computer media.

B.   When asked to "identify" a document, state the title, subject matter, author, date and addressee, file designation or other identifying designation and the present location and custodian of the document.   When asked to "identify" a person or entity, state the name, address, phone number, and if a person, state the name of that person's employer and the position held by such person.

C.   As used herein, the terms "you", "your", "yourself" refer to the Defendant, and each of its agents, representatives, attorneys, and each person acting or purporting to act on its behalf.

D.  As used herein, the term "representative" means any and all agents, employees, servants, officers, directors, attorneys or other persons acting or purporting to act on its behalf.

E.  As used herein, the term "communication" means any oral or written utterance, notation, or statement of any nature whatsoever, by and to whomsoever made, including, but not limited to, correspondence, conversations, dialogues, discussions, interviews, consultations, agreements and other understandings between or among two or more persons.

With respect to each interrogatory, in addition to supplying information requested, you are to identify all documents that support, refer to, or evidence the subject matter or each interrogatory and your answer thereto.  If any or all documents identified herein are no longer in your possession, custody or control because of destruction, loss or any other reason, then do the following with respect to each and every such document:

(a) Describe the nature of the document;

(b) State the date the document was created;

(c) Identify the person who created the document;

(d) Identify the persons who sent and received the original, and any copy of the document;

(e) State, in detail, the contents of the documents, and

(f) State the manner and date of the disposition of the document.

When an interrogatory requires you to "explain in detail the basis of" a particular claim, contention, or allegation, state in your answer the identity of each and every communication, document and each and every legal theory that you contend, support, report, refer to, or evidences such claim, contention, or allegation.

With respect to each interrogatory, in addition to supplying the information requested you are to identify all persons with personal knowledge of any facts pertaining to the question propounded in the interrogatory, set forth the person's address and telephone number, and set forth the facts known by each such person.

These Interrogatories are intended to be continuing Interrogatories. Please supplement your answers with any information within the scope of the Interrogatories as may be acquired by you, your agents, attorneys or representatives following your original answering of these Interrogatories.

INTERROGATORY NO. 1: Identify all person(s) answering these interrogatories including name, address, telephone number and occupation.

ANSWER:

INTERROGATORY NO. 2:      Please state the name, address and telephone number of every person you intend to call as a witness at trial, and describe in detail the anticipated testimony to be given by each such witness.

ANSWER:

INTERROGATORY NO. 3:      Please list the name, address and telephone number of each expert witness you intend to call at the trial, or any hearing in this matter, and in relation to each, please state:

a.   The subject matter on which the expert is expected to testify;

b.   The substance of facts or opinions to which the expert is expected to testify;

c.   A summary of the grounds for each opinion.

ANSWER:

INTERROGATORY NO. 4:     Please list specifically and in detail each exhibit you intend to introduce at trial or any hearing in this matter.

ANSWER:

Respectfully submitted,

FLOYD D. WILSON, P.C.

By _____
   Floyd D. Wilson
   Attorney for Defendant
   6707 Academy Road NE
   Albuquerque, New Mexico 87109
   (505) 857-0001

c:\collierh.big\rogs.def

SECOND JUDICIAL DISTRICT COURT
COUNTY OF BERNALILLO
STATE OF NEW MEXICO

        NO. CV-2005-10580

FOOTHILLS OF ALBUQUERQUE SHOPPING
CENTER ASSOCIATES,

     Plaintiff,

vs.

SUNWEST N.O.P., INC., a Nevada
corporation,

     Defendant.

## FIRST REQUEST FOR PRODUCTION OF DOCUMENTS TO DEFENDANT

**COMES NOW** Plaintiff, by and through its attorney, Floyd D. Wilson, P.C., and requests the Defendant, Sunwest N.O.P., Inc., to produce the hereinafter-requested documents at the offices of Floyd D. Wilson, P.C., 6707 Academy Road, N.E., Albuquerque, New Mexico 87109, within thirty (30) days after the service of this request.

The word "document" is used herein in its broadest sense and includes any original, reproduction or copy of any kind, typed, recorded, graphic, printed, written or documentary matter, including, without limitation, correspondence, memoranda, inter-office communications, notes, diaries, contracts, documents, drawings, plans, specifications, estimates, vouchers, permits, minutes or notes of meetings, invoices, billings, checks, reports, studies, telegraphs, notes of telephone conversations and notes of any and all communication or representation including letters,

words, pictures, sounds or symbols or combinations thereof, and includes electronic means of data recordation and computer media.

PLEASE PRODUCE:

1. All documents which you intend to, or may, seek to introduce at any hearing or trial in this matter.

2. All reports, correspondence, memoranda and other documents which in any way discuss the cause, causes or possible cause or causes, of damage to the roof, of the leased premises, which are the subject of this action; and which took place on or about June 26, 2006.

3. All reports, correspondence, memoranda and other documents which in any way discuss or relate to the condition of the roof of the leased premises which are the subject of this litigation.

Respectfully submitted,

FLOYD D. WILSON, P.C.

By _____
      Floyd Wilson
      Attorneys for Defendant
      6707 Academy Road, N.E.
      Albuquerque, New Mexico 87109
      (505) 857-0001

c:\collierh.big\rfp

SECOND JUDICIAL DISTRICT COURT
COUNTY OF BERNALILLO
STATE OF NEW MEXICO

NO. CV-2006-10580

FOOTHILLS OF ALBUQUERQUE SHOPPING
CENTER ASSOCIATES,

    Plaintiff,

vs.

SUNWEST N.O.P., INC., a Nevada
corporation,

    Defendant.

**RECEIVED**

FEB 5 2007

Sutin, Thayer & Browne
A Professional Corporation

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that an original and one true copy of Plaintiff's First Set of Interrogatories to Defendant; First Request for Production of Documents to Defendant, together with a copy of this Certificate, were mailed this ___2___ day of _____February_____, 2007 to Gail Gottlieb, Esq., of Sutin, Thayer & Browne, Attorneys for Defendant, P.O. Box 1945, Albuquerque, NM 87103.

        Respectfully submitted,

        FLOYD D. WILSON, P.C.


        By_____
         Floyd D. Wilson
         Attorney for Plaintiff
         6707 Academy Road NE
         Albuquerque, New Mexico 87109
         (505) 857-0001

c:\collierh.big\cerser

**SECOND JUDICIAL DISTRICT COURT**
**COUNTY OF BERNALILLO**
**STATE OF NEW MEXICO**

ENDORSED
FILED IN MY OFFICE THIS

FEB 0 5 2007

*Juanita M. Duran*
CLERK DISTRICT COURT

JANET L. ASHLEY

### NO.  CV-2006 10580

**FOOTHILLS OF ALBUQUERQUE SHOPPING**
**CENTER ASSOCIATES,**

                    **Plaintiff,**

**v.**

**SUNWEST N.O.P., INC., a Nevada**
**corporation,**

                    **Defendant.**

### PEREMPTORY CHALLENGE

Defendant, Sunwest N.O.P., Inc., by and through its attorneys, Sutin, Thayer & Browne A Professional Corporation (Gail Gottlieb), hereby notifies the Court that the Honorable Richard J. Knowles is hereby excused from presiding over the above-entitled and numbered cause of action.

                    SUTIN, THAYER & BROWNE
                    A Professional Corporation

                    By _____
                        Gail Gottlieb
                        Attorneys for Defendant
                        Sunwest N.O.P., Inc.
                        P.O. Box 1945
                        Albuquerque, NM 87103
                        (505) 883-2500

We hereby certify that a true and
correct copy of the foregoing was
mailed to:

Floyd D. Wilson
Attorney for Plaintiff
6707 Academy NE
Albuquerque, New Mexico 87109

this ~~30~~ 5th day of ~~January~~ February, 2007

**STATE OF NEW MEXICO**
COUNTY OF BERNALILLO
**JUDICIAL DISTRICT COURT**

**Case Number: D-202-CV-200610580**
Dated: February 5, 2007

FOOTHILLS OF ALBUQUERQUE SHOPPING CENTER ASSOCIATES, Plaintiff
vs.
SUNWEST NOP INC, Defendant

**ENDORSED**
**FILED IN MY OFFICE THIS**

**FEB 0 5 2007**

*Juanita M. Duran*
**CLERK DISTRICT COURT**

## NOTICE OF JUDGE ASSIGNMENT

 The above referenced cause has been reassigned to the Honorable TED C. BACA, District
Judge, effective February 5, 2007, due to the EXCUSAL of the Honorable RICHARD J.
KNOWLES, District Judge.

JUANITA M DURAN
CLERK OF THE DISTRICT COURT
By: ANN M. COULSON
ANN COULSON

### Certificate Of Mailing

 I hereby certify that a true and correct copy of the foregoing was mailed to counsel on
this day, February 5, 2007.

JUANITA M DURAN
CLERK OF THE DISTRICT COURT

By: ANN M. COULSON
ANN COULSON

GAIL GOTTLIEB
PO BOX 1945
ALBUQUERQUE, NM 87103-1945

ENDORSED
FILED IN MY OFFICE THIS

SECOND JUCICIAL DISTRICT COURT
COUNTY OF BERNALILLO
STATE OF NEW MEXICO

FEB 0 8 2007

*Juanita M. Duran*
CLERK DISTRICT COURT

NO. D-202-CV-200610580

PATRICIA SERNA

FOOTHILLS OF ALBUQUERQUE SHOPPING CENTER ASSOCIATES,

    Plaintiff,

vs.

SUNWEST NOP INC.,

    Defendant.

### PREEMPTORY ELECTION TO EXCUSE A JUDGE

Pursuant to Rules 1-088 and 1.088.1 of the New Mexico Rules of Civil Procedure for the District Court, the Plaintiff, Foothills of Albuquerque Shopping Center Associates, by and through its attorney, Floyd D. Wilson, does hereby elect to excuse The Honorable Ted Baca, in the above-entitled cause.

                    Respectfully submitted:

                    FLOYD D. WILSON, P.C.

                    By _____
                          Floyd D. Wilson
                          6707 Academy RD NE
                          Albuquerque, New Mexico 87109
                          (505) 857-0001

                    ATTORNEY FOR PLAINTIFF

c:\foothills\excjud

ENDORSED
**FILED** IN MY OFFICE THIS

SECOND JUDICIAL DISTRICT COURT
COUNTY OF BERNALILLO
STATE OF NEW MEXICO

FEB **0 8** 2007

NO. CV-2006 10580

*Juanita M. Duran*
CLERK DISTRICT COURT

FOOTHILLS OF ALBUQUERQUE SHOPPING CENTER ASSOCIATES,

    Plaintiff,

vs.

SUNWEST N.O.P., INC.
   Defendant.

CERTIFICATE OF SERVICE

    I HEREBY CERTIFY that a true and correct copy of Preemptory Election to Excuse a Judge, was mailed this _8_ day of _February_, 2007 to Gail Gottlieb, Attorney for Defendant, P.O. Box 1945, Albuquerque, New Mexico, 87103.

          Respectfully submitted,

          FLOYD D. WILSON, P.C.

          By _____
            Floyd D. Wilson
            Attorney for Plaintiff
            6707 Academy Road NE
            Albuquerque, New Mexico 87109
            (505) 857-0001

h:cerser